**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

**PITTSBURGH**


JOHN FRANC,                                  )
                                             )
                 Plaintiff,                  )              2:22-CV-01401-MJH
                                             )
       vs.                                   )
                                             )
MOODY'S ANALYTICS, INC.,                     )
                                             )
                                             )
                 Defendant,

**<u>MEMORANDUM OPINION</u>**

On October 6, 2022, Plaintiff, John Franc, sued Defendant, Moody's Analytic, Inc. (ECF
No. 1). On January 29, 2023, Mr. Franc filed an Amended Complaint, asserting race and age
discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age
Discrimination Act of 1967 ("ADEA"), and the Pennsylvania Human Relations Act ("PHRA").
(ECF No. 9). On July 17, 2024, Moody's filed a Motion for Summary Judgment and Motion for
Sanctions, accompanying brief, and Concise Statement of Material Facts. (ECF Nos. 41-43). On
August 8, 2024, Moody's filed a letter to the court, concerning its own Motions for Summary
Judgment and Sanctions, arguing that Mr. Franc failed to timely respond; and thus, requested
that its motions be granted. (ECF No. 46). On August 16, 2024, Mr. Franc filed Responses in
Opposition to Moody's Motions for Sanctions and Summary Judgment, accompanying briefs,
and a Counter Statement of Material Facts. (ECF Nos. 47-50). On August 30, 2024, Moody's
filed a Reply to Mr. Franc's Responses as well as a Reply to Mr. Franc's Counter Statement of
Material Facts. (ECF Nos. 51-53). Presently, before the Court, is Moody's Motion for Summary

Judgment. All issues are briefed and ripe for disposition. For the following reasons, Moody's Motion for Summary Judgment will be granted.

## I.    Statement of Facts

On or about October 31, 2017, Plaintiff, John Franc, began working for Moody's Analytic, Inc. ("Moody's"). (ECF No. 52, at 1) At the time of these events, Mr. Franc was 52 years old. (*Id.* at 14). On September 9, 2021, the federal government announced that it would enforce COVID-19 safety regulations upon federal contractors.[1] Moody's is a federal contractor and is a party to multiple federal contracts. In response to the executive order, on September 13, 2021, Moody's sent an email and mandatory survey to all of its employees. Moody's required each employee to respond to the survey and to provide his or her vaccination status. (ECF No. 52, at 7). The survey asked employees to select one of the three following options:

1.  I am fully vaccinated.

2.  I intend to be fully vaccinated in the near future.

3.  I do not intend to receive the vaccine.

(ECF No. 44-6). The employees were directed to respond to the survey by September 22, 2021. (ECF No. 52, at 6). Mr. Franc did not respond to the survey by the September 22, 2021 deadline. (*Id.* at 7).

On October 20, 2021, Moody's emailed Mr. Franc, reiterating that the survey was mandatory and that his response deadline was extended to October 21, 2021. (ECF No. 44-7). Mr. Franc did not complete the survey by October 21, 2021. (ECF No. 52, at 8). On November 17, 2021, Sarah

---

[1] *See* Executive Order 14042, "Ensuring Adequate COVID Safety Protocols for Federal Contractors," publicly available at https://www.whitehouse.gov/briefing-room/presidential-actions/2021/09/09/executive-order-on-ensuring-adequate-covid-safety-protocols-for-federal-contractors/.

Stratton, a Human Resources employee at Moody's, sent an email to Mr. Franc, directing him to select one of the following options regarding his vaccine status:

1. I am currently fully vaccinated.

2. I will be fully vaccinated by January 3, 2022.

3. I am not vaccinated, but I plan to request an exemption from Moody's vaccination requirements.

4. I am not vaccinated, and I do not plan to get vaccinated or request an exemption from Moody's vaccination requirements.

(*Id.*). Mr. Franc was given until November 18, 2021 to respond to the questions contained within Ms. Stratton's email. (*Id.* at 9). The email also communicated to Mr. Franc that failure to respond would result in the termination of his employment at Moody's. (*Id.* at 10). On November 18, 2021, Mr. Franc responded to the email, stating that he would "not consent to share personal and private health information." (ECF 44-8). On November 13, 2021, Moody's sent an email to Mr. Franc terminating his employment at the company, because he refused to respond to the mandatory vaccination surveys. (ECF No. 44-10).

## II.      Relevant Legal Standards

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted). Additionally, for a factual dispute to be material, it must have an

effect on the outcome of the suit. *Id.* In reviewing and evaluating the evidence to rule upon a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted). However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion.  Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 256-57 (internal citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of the party." *Id.* at 251 (internal citation omitted).

### III.    Discussion

### A.  Age and Race Discrimination Claims

Mr. Franc brings age and race discrimination claims against Moody's under Title VII, the ADEA, and PHRA, arguing that Moody's replaced him with a younger, Asian individual; and

thus, Moody's discriminated against him based upon his age and race. (ECF No. 9, at 4). Moody's argues that Mr. Franc fails to provide record evidence that a genuine issue of material fact exists to establish a prima facie case for age or race discrimination under the relevant statutes. (ECF No. 42, at 7).

Disparate treatment race and age discrimination claims under the Title VII, the ADEA, and the PHRA are subject to the burden-shifting analysis originally established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case for age discrimination under the ADEA and the PHRA, Franc must demonstrate that: (1) he is 40 or older; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he was replaced by a sufficiently younger person such that a reasonable inference of age discrimination was created. *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004); *see also McGrath v. Lumbermens Merchandising Corp.*, 851 F. Supp. 2d 855, 859 (E.D. Pa. 2012) (finding that claims under the ADEA and the PHRA "are coextensive"). To establish a prima facie claim for race discrimination under Title VII and PHRA, Franc must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for the position he held; and (3) he was discharged under circumstances that give rise to an inference of unlawful discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989).

Here, Mr. Franc fails to provide sufficient record evidence to show that a genuine issue of material fact exists to establish a prima facie case that he was terminated because of his race or age. The record evidence clearly establishes that he was terminated because of his failure to respond to the mandatory vaccination surveys. In Ms. Sutton's November 17, 2021 email, she informed Mr. Franc that failure to respond to her email, which contained an updated vaccination

survey, would result in imminent termination of employment. Mr. Franc did not complete or submit the survey, and he was terminated the next day. Moreover, Mr. Franc testified that he was unaware of anyone who did not respond to the vaccination survey and who remained employed by Moody's. Mr. Franc testified, stating:

> Q: Are you aware of anybody who did not respond to the vaccination survey who kept their job?
>
> A: No.

(ECF No. 44-5, at 91).

Mr. Franc further testified that he was not surprised that anyone who failed to complete the survey was terminated:

> Q: If I told you every employee who did not respond to the survey was terminated, would that surprise you?
>
> A: No.
>
> Q: Why not?
>
> A: Because they said if you didn't respond, you were at risk to be terminated.

(*Id.* at 92). Mr. Franc does not provide any record evidence to show that any comparator, who refused to answer the vaccination surveys and was younger and/or of a different race than him, was not fired. Additionally, only two other Moody's employees did not provide survey responses to provide the requested information. Both of those employees were also fired. (ECF No. 52, at 13). One of those two employees was a 28-year-old African American woman. (ECF No. 44-11).

6

Furthermore, Mr. Franc testified that he has no evidence that he was terminated because of his age, other than his own belief that such was the case:

> Q: Do you believe the decision to terminate your employment in November 2021 was based upon your age?
>
> A: It could have been. Yes.
>
> Q: What basis do you base that assertion that the decision could have been based on your age?
>
> A: Because I was older and more expensive.
>
> Q: Any other basis?
>
> A: No.
>
> . . .
>
> Q: Other than the fact that you were older than others on this team, is there any other basis for your assertion that age may have factored into this decision?
>
> A: No.

(ECF No. 44-5 at 94, 96). Mr. Franc fails to point to any record evidence to show that a genuine issue of material facts exists to establish a prima facie case for race or age discrimination.

Further, even if Mr. Franc could establish a prima facie case for age or race discrimination, he fails to produce record evidence to show that Moody's non-discriminatory reason for firing him was pretextual. As to this issue, Mr. Franc argues that Moody's participated in a diversity hiring initiative in which Moody's attempted to hire individuals of Indian descent, and that he

was fired, at least in part, because of this diversity initiative. (ECF No. 48, at 3). In support of

this argument, Mr. Franc points to his testimony that he was involved with a hiring process in

which all potential candidates were individuals of Indian descent. (*Id.*). Mr. Franc also testified

that the resumes of potential candidates during said hiring process had a stamp on them that read

"diversity candidate." (*Id.*). However, Mr. Franc's evidence fails to relate these alleged diversity

initiatives were related to his own termination. There is no record evidence to show that Mr.

Franc was in a hiring circumstance, nor that he was seeking any sort of promotion. Further, mere

diversity initiatives alone within a company do not establish that Moody's was engaging in

discriminatory practices. *See Blanke v. Rochester Tel. Corp.*, 36 F. Supp. 2d 589 (W.D.N.Y.

1999) (discussing how the presence of a diversity program has no bearing on discrimination

claim of terminated white employee); *Opsatnik v. Norfolk S. Corp.*, 2008 WL 763745, at *11

(W.D. Pa. 2008), aff'd, 335 F. App'x 220 (3d Cir. 2009) ("[T]o use diversity concerns, without

more, as evidence of discrimination would be irresponsible."). Mr. Franc does not provide any

evidence to connect the alleged diversity hiring initiative to his own termination. Mr. Franc even

admitted that he was terminated because of his failure to respond to the vaccination survey.

During Mr. Franc's deposition, he testified:

> Q: If you had responded to Sarah Stratton's email by the 5:00 o'clock deadline saying
>
> effectively, I am not vaccinated, and I do not plan to get vaccinated, or request an exemption
>
> from Moody's vaccination requirements, what do you believe would have happened to your
>
> employment?
>
> A: I would have still been employed.

(ECF No. 44-5, at 90). As such, Mr. Franc has not established any evidence to create any

genuine issue of material to show that Moody's non-discriminatory reason for terminating him

was pretextual. Accordingly, Moody's Motion for Summary Judgment, related to Mr. Franc's race and age discrimination claims under Title VII, the ADEA, and the PHRA, will be granted.

## IV.      Conclusion

For the above reasons, Moody's Motion for Summary Judgment will be granted in full. Judgment will be entered in favor of Defendant and against Plaintiff as to all claims and counts within the Amended Complaint. A separate Order to follow.

DATE: 10/4/2024

Marilyn J. Horan
United States District Judge